1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8    DOUGLAS POWERS,                          Case No.  19-cv-05642-VKD

                    Plaintiff,
9
                                              **ORDER DENYING DEFENDANTS'**
10           v.                               **MOTION TO DISMISS**

11   MAD VAPATORY LLC, et al.,                 Re: Dkt. No. 16

                    Defendants.
12

13

14          In this disability rights action, plaintiff Douglas Powers sues for alleged accessibility

15   violations he says he encountered during a July 2019 visit to a Vape Affair store ("Facility") in

16   Santa Clara, California.  He asserts claims under Title III of the Americans with Disabilities Act of

17   1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* and the California Unruh Civil Rights Act ("Unruh

18   Act"), Cal. Civ. Code § 51, *et seq.*  Pro se defendants Margaret and Hazim Petros own the

19   property where the Facility is located.  They move to dismiss the complaint pursuant to Rule

20   12(b)(1), arguing that Mr. Powers's ADA claim is moot.[1]  Because the ADA claim is the sole

21   basis for federal jurisdiction, and because injunctive relief is the only remedy available to Mr.

22   Powers under the ADA, defendants request that the Court decline to exercise supplemental

23   jurisdiction over Mr. Powers's Unruh Act claim.  The Court held a hearing on the motion on

24   February 11, 2020 and directed the parties to submit supplemental briefing regarding Mr.

25   Powers's standing to pursue this action.  Upon consideration of the moving and responding

26

27   [1] Defendants contend that the initial stay on proceedings imposed by General Order No. 56 does
     not preclude them from bringing the present motion to dismiss.  Mr. Powers does not dispute this
28   point.

United States District Court
Northern District of California

1    papers, as well as the oral arguments presented, the Court denies defendants' motion.[2]

2    **I.      BACKGROUND**

3           According to his complaint, Mr. Powers "has been disabled since amputation of his leg,"

4    and his "physical impairments substantially limit and/or affect one or [sic] major life activities

5    such as walking."  Dkt. No. 1 ¶ 2.  He says that he visited the Facility at least six times since 2017.

6    *Id*. ¶ 10.  During his most recent visit in July 2019, Mr. Powers claims that he encountered the

7    following barriers to access in the parking lot and at the entrance of the Facility:

8           1.   "No unauthorized vehicle parking tow away warning sign mounted at either the

9                entrance to off-street parking or immediately adjacent to and visible from disabled

10               parking areas";

11          2.   "No accessible route from disabled parking to the entrance of Facility";

12          3.   "No accessible route form [sic] public street and sidewalk to entrance of Facility";

13          4.   "No accessible route connecting buildings, facilities, elements and spaces at the

14               Facility";

15          5.   "No van accessible disabled parking space and/or adjacent access aisle";

16          6.   "No compliant disabled parking identification signage"; and

17          7.   "The entrance door requires more than 5 lbs. of maximum force to operate."

18   *Id*.[3]  Mr. Powers seeks injunctive relief under the ADA, as well as $4,000 in statutory damages

19   under the Unruh Act "for each event of discrimination and for each time [he] has been deterred

20   from returning to the business together with attorney's fees and litigation costs and expenses."  *Id*.

21   ¶ 32.

22          Mr. and Mrs. Petros contend that Mr. Powers's ADA claim is moot.  They state that within

23   a few months after the present suit was filed, the Facility permanently closed its business and

24   vacated the premises.  Additionally, defendants claim that they remedied all accessibility barriers

25

26   [2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 5, 12, 15, 24.

27   [3] The complaint also alleges that the Facility's entrance door did not have a 10-inch uninterrupted
28   smooth surface on the push side of the door.  Dkt. No. 1 ¶ 10.  However, Mr. Powers now acknowledges that this particular item has been remedied.  Dkt. No. 21-1 ¶ 6.

United States District Court
Northern District of California

1    at their property in connection with an earlier disability rights suit filed by a different plaintiff,

2    which was settled and dismissed in 2018.  Further, defendants argue that Mr. Powers's allegations

3    about any existing accessibility violations are misguided, arguing that the cited accessibility

4    mandates do not apply to the property.  More fundamentally, in their reply papers, defendants

5    challenge Mr. Power's standing to bring the present action inasmuch as they appear to claim that

6    he has not alleged facts demonstrating that any purported barriers deprived him of full and equal

7    enjoyment of the Facility due to his particular disability.  Because they contend that Mr. Powers's

8    ADA claim is moot, defendants request that the Court decline to exercise jurisdiction over his

9    Unruh Act claim.

10   **II.     LEGAL STANDARD**

11          A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject

12   matter of a plaintiff's complaint.  A jurisdictional challenge under Rule 12(b)(1) may be made

13   either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual

14   attack").  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing

15   *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  "In a facial attack, the challenger asserts that

16   the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

17   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

18   themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373

19   F.3d 1035, 1039 (9th Cir. 2004).  In resolving a factual attack on jurisdiction, the district court

20   may review evidence beyond the complaint and is not required to presume the truthfulness of the

21   plaintiff's allegations.  *Id*.  The party asserting federal subject matter jurisdiction bears the burden

22   of establishing its existence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

23   (1994).

24   **III.    DISCUSSION**

25          **A.     Mr. Powers's Standing**

26          The ADA is a civil rights statute that relies primarily on private enforcement actions to

27   obtain compliance, and the Supreme Court has instructed that courts therefore should take a

28   "broad view of constitutional standing."  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).  A plaintiff asserting

2    an ADA claim must nonetheless establish his standing under Article III of the United States

3    Constitution.  *Id*.  Under Article III of Constitution, federal courts have jurisdiction to decide only

4    actual "Cases" or "Controversies," U.S. Const., art. III, § 2, and Mr. Powers has standing to sue if

5    he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

6    defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.*

7    *Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

8    61 (1992).  Mr. Powers's claimed injury must be both "particularized" and "concrete."  A

9    "particularized" injury is one that "'affect[s] the plaintiff in a personal and individual way.'"

10   *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1).  A "concrete" injury "must

11   actually exist" and must be "real, and not abstract."  *Id*.

12          In the context of injunctive relief, which is the only remedy available to Mr. Powers under

13   Title III of the ADA, *see* 42 U.S.C. § 12188; *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002), a

14   plaintiff "must additionally demonstrate a sufficient likelihood that he will again be wronged in a

15   similar way."  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (internal

16   quotations and citation omitted).  "That is, he must establish a real and immediate threat of

17   repeated injury."  *Id*. (internal quotations and citation omitted).  In the Ninth Circuit, an ADA

18   plaintiff may establish standing "either by demonstrating deterrence, or by demonstrating injury-

19   in-fact coupled with an intent to return to a noncompliant facility."  *Chapman v. Pier 1 Imports*

20   *(U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).

21          Mr. Powers's complaint alleges that during his July 2019 visit to the Facility, he

22   encountered certain accessibility barriers in the parking lot and at the Facility's entrance that

23   "caused [him] to feel like a second-class citizen," required him to "utilize a regular parking space"

24   and to "travel behind other vehicles other than his own to reach the entrance," and made it difficult

25   for him to enter the Facility.  Dkt. No. 1 ¶ 11.  As noted above, those alleged barriers concern the

26   lack of requisite signage, accessible parking and paths of travel, as well as an entrance door that is

27   too heavy to open.  *Id*. ¶ 10.  Mr. Powers does not affirmatively claim that these alleged barriers

28

4

United States District Court
Northern District of California

1    deterred him from visiting the Facility.[4]  To the contrary, the complaint alleges that he "intends to

2    continue to visit the Facility and will continue to be discriminated against until the barriers to

3    access are removed."  *Id*. ¶ 12.  Accordingly, his standing depends on whether he has pled

4    sufficient facts demonstrating injury-in-fact and an intent to return to a noncompliant facility.

5         Mr. and Mrs. Petros challenge the truth of Mr. Powers's allegations, essentially arguing

6    that he has not alleged facts demonstrating that any purported barriers deprived him of full and

7    equal enjoyment of the Facility due to his particular disability.  Here, defendants contend that Mr.

8    Powers is a "heavily muscular" man and that his "amputated leg does not prevent him from

9    functioning in any less capacity than the average non-disabled individual."  Dkt. No. 30 at 2.

10   They submit photos purporting to show Mr. Powers, with the use of a prosthetic leg, engaging in

11   weightlifting activities and participating in sporting events.  Dkt. No. 29 at ECF 12-16; Dkt. No.

12   30 at ECF 12-14.  Defendants seem to argue that such physical abilities are inconsistent with any

13   suggestion that Mr. Powers's use of or access to the Facility was more difficult for him than for a

14   nondisabled individual.  Indeed, they note that he does not allege that he was unable to patronize

15   the Facility due to the presence of the alleged barriers.  Dkt. No. 39 at 4.

16        It is unclear when the photos submitted by defendants were taken, and defendants have not

17   otherwise laid a proper foundation for their admissibility.[5]  Nevertheless, Mr. Powers does not

18   dispute that he is the person depicted in the submitted photos and acknowledges that he previously

19   "participated in vigorous recreational physical activities including marathons and weight training

20   events."  Dkt. No. 35 at 5; *see also* Dkt. No. 35-1 ¶ 2.  In his supplemental briefing, however, Mr.

21   Powers now asserts that since 2014, his physical condition has deteriorated significantly due to a

22   heart condition and blood clotting disorder, such that his balance is compromised and any fall or

23

24   ―――――――――――――――

[4] The complaint contains a single cursory allegation that Mr. Powers "will suffer ongoing
25   discrimination and damages by being excluded and deterred from the Facility."  Dkt. No. 1 ¶ 13.
That stray allegation appears to be at odds with Mr. Powers's affirmative allegation that
26   notwithstanding the presence of the alleged accessibility barriers, he intends to continue to visit
the Facility.  *Id*. ¶ 12.  The allegations of Mr. Powers's complaint are too conclusory to plausibly
27   support his standing based on a deterrence theory.

[5] The Court has not found it necessary to review videos defendants submitted with their
28   supplemental briefing, apparently for the same purpose as the photos.

1    injury is particularly perilous for him.  As such, he avers that he has "not actively participated in

2    these types of physical activities . . . since that time."  Dkt. No. 35-1 ¶ 2.  In sum, Mr. Powers

3    asserts that his current "physical condition means that he increasingly relies upon accessible

4    parking spaces, accessible routes of travel, and other accessible features to ensure that he is able to

5    safely traverse the Facility and is afforded full and equal access to places of accommodates [sic]."

6    Dkt. No. 35 at 6.

7        Defendants do not believe that Mr. Powers's assertions about his current physical

8    condition are true, and they urge the Court to consider materials that they contend bear on his

9    veracity, but which, for present purposes, the Court does not find relevant.  The Court has some

10   concern that in contending that Mr. Powers lacks standing to pursue a claim for injunctive relief

11   under the ADA, defendants may focus too much on Mr. Powers's purported physical capabilities,

12   rather than the nature of his particular disability.  Mr. Powers's "standing to claim an ADA

13   violation is necessarily linked to the nature of his disability," and the Ninth Circuit "recognize[s]

14   that an encountered barrier must interfere with the particular plaintiff's full and equal enjoyment

15   of the facility, making his use of the facility more difficult than a nondisabled individual's, to

16   constitute an injury-in-fact, and that he is required to allege and prove that injury."  *Chapman*, 631

17   F.3d at 947 n.4.  Thus, the Ninth Circuit has explained that while a visually impaired person would

18   have standing to assert an ADA violation where a facility's elevator lacks floor buttons in Braille,

19   a person who requires the use of a wheelchair for mobility, but who can see and press floor

20   buttons, would not.  *Id*.

21       Although defendants do not dispute that Mr. Powers is an amputee, they challenge his

22   allegation that his physical impairment significantly limits activities, such as walking.  Under the

23   ADA "[t]he determination of whether an impairment substantially limits a major life activity shall

24   be made without regard to the ameliorative effects of mitigating measures such as . . . prosthetics

25   including limbs and devices . . .."  42 U.S.C. § 12102(4)(E)(i)(I).  As currently pled, Mr. Powers's

26   complaint alleges sufficient facts establishing that the amputation of his leg affects his ability to

27   walk, such that he is disabled within the meaning of the ADA.  Dkt. No. 1 ¶ 2.

28       While the complaint's allegations indicate that Mr. Powers was able to patronize the

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    Facility, "when a disabled person encounters an accessibility barrier violating its provisions, it is

2    not necessary for standing purposes that the barrier completely preclude the plaintiff from entering

3    or from using a facility in any way." *Chapman*, 631 F.3d at 947.  "Rather, the barrier need only

4    interfere with the plaintiff's 'full and equal enjoyment' of the facility."  *Id*. (quoting 42 U.S.C.

5    § 12182(a)).  "Because the ADAAG [ADA Accessibility Guidelines] establishes the technical

6    standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a

7    plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes

8    'discrimination' under the ADA.  *Id*.  "That discrimination satisfies the "injury-in-fact" element of

9    *Lujan*."  *Id*.

10          Here, the allegations of Mr. Powers's complaint, while less detailed than the assertions

11    now offered in his supplemental briefing, provide more than a formulaic recitation of the

12    applicable legal standard.  He alleges that he is disabled due to the amputation of his leg, that he

13    encountered specified barriers during a July 2019 visit to the premises which relate to his

14    disability, and alleges facts stating how those purported barriers made it difficult for him to access

15    the Facility.  Assuming the alleged barriers violate the ADAAG, these allegations are sufficient to

16    establish an injury-in-fact.  *Chapman*, 631 F.3d at 947.

17          Additionally, Mr. Powers alleges that he intends to "continue to visit the Facility and will

18    continue to be discriminated against until the barriers to access are removed."  Dkt. No. 1 ¶ 12.

19    While defendants contend that the Facility is no longer in business and has vacated the premises,

20    that any alleged barriers have been remedied, and that Mr. Powers at some point moved to a

21    different town closer to other vape stores, "[t]he evidence relevant to the standing inquiry consists

22    of "the facts as they existed at the time the plaintiff filed the complaint."  *D'Lil v. Best Western*

23    *Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) (quoting *Skaff v. Meridien North*

24    *America Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).  On the record presented, the

25    Court finds that Mr. Powers has sufficiently alleged his standing as of the time the complaint was

26    filed.

27

28

7

United States District Court
Northern District of California

1    Accordingly, the Court denies defendants' motion to dismiss for lack of standing.[6]

2    **B.    Mootness**

3    Defendants nonetheless argue that Mr. Powers's ADA claim is moot.  As noted above,

4    they point out that the Facility has closed its business and vacated the premises.  Their primary

5    contention, however, is that all alleged barriers have been remedied and that Mr. Powers otherwise

6    cites accessibility mandates that do not apply to defendants' property.

7    A claim may become moot if (1) subsequent events have made it absolutely clear that the

8    allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or

9    events have completely and irrevocably eradicated the effects of the alleged violation.  *Norman-*

10   *Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998) (citing *United States v.*

11   *Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *Lindquist v. Idaho State Bd. Of*

12   *Corrections*, 776 F.2d 851, 854 (9th Cir. 1985)).  In the ADA context, courts have concluded that

13   a claim for injunctive relief is moot "if the premise complained of closes down with no plans to

14   reopen or if the defendant no longer owns or controls the challenged premises."  *Johnson v. Rai*

15   *Rocklin Investments, LLC*, No. 2:15-CV-02698-KJM-EFB, 2017 WL 3421848, at *2 (E.D. Cal.

16   Aug. 9, 2017) (citing cases); *see also, e.g., Moore v. Millennium Acquisitions, LLC*, 708 F. App'x

17   485, 485 (9th Cir. 2018) (finding an ADA claim moot where defendant sold the gas station where

18   plaintiff encountered architectural barriers, and the gas station was being dismantled); *Kohler v.*

19   *Southland Foods, Inc.*, 459 F. App'x 617, 618 (9th Cir. 2011) (affirming summary judgment for

20   defendants because the plaintiff's claim for prospective injunctive relief became moot once the

21   subject restaurant ceased operation).

22   In the present action, the closing of the Facility does not moot Mr. Powers's ADA claim

23   entirely.[7]  Mr. and Mrs. Petros acknowledged at oral argument that they intend to lease the space

24

25   [6] Although the Court declines to dismiss this matter for lack of standing, it is nonetheless
     concerned by defendants' assertions, which are not refuted by Mr. Powers or his counsel, that
26   counsel has never met with Mr. Powers.  Although the Court is not aware of a requirement that an
     attorney meet with his client in person, defendants' assertion does raise questions about the
27   thoroughness of counsel's pre-lawsuit investigation.

28   [7] At the motion hearing, Mr. Powers seemed to acknowledge that with respect to defendant Mad
     Vapatory, his ADA claim may be moot, but that his Unruh Act claim is not.

1    previously occupied by the Facility, and they expect that the space will be re-opened as a place of

2    public accommodation.  *See, e.g., Love v. Gertrude Allen Family Ltd. P'Ship*, No. 18-cv-04082-

3    JSW, 2019 WL 3779505, at \*3 (N.D. Cal. Aug. 12, 2019) (concluding that, although the subject

4    business had vacated the premises and did not intend to return to the property as a tenant, the

5    plaintiff's ADA claim was not moot because there was no evidence that the property owner did

6    not intend to re-lease or reopen the property).

7         Defendants nonetheless argue that they already fixed any accessibility barriers in

8    connection with a prior disability rights lawsuit and that their property is in compliance with the

9    ADA.  Relatedly, defendants contend that Mr. Powers misapprehends the nature of the property in

10   question and that the law does not require them to provide the accessibility features that Mr.

11   Powers claims are needed.  They maintain, for example, that the property consists of two buildings

12   served by a single parking lot with less than 25 parking spaces, and that they therefore are not

13   required to have more than one parking space designated for disabled persons.

14        To support their contention that accessibility barriers have been remedied, defendants

15   submitted with their opening brief inspection certificates from their retained accessibility

16   specialist, Kelly Bray.  Dkt. No. 17 at ECF 5-8.  Those inspection certificates, however, are dated

17   November 29, 2017 and simply indicate that the property was inspected.  Moreover, the

18   certificates expressly state they do "not imply that this facility meets design and construction

19   requirements for accessibility for individuals with disabilities."  *Id*.  Although defendants also

20   submitted a November 15, 2019 "Statement of Accessibility Compliance" from Mr. Bray

21   concerning the property, that document does not specifically address the barriers alleged by Mr.

22   Powers.  Dkt. No. 17 at ECF 10.  In opposing the present motion, Mr. Powers submitted a

23   declaration from his accessibility specialist, Jason Vaughn, who attests that he visited the property

24   on January 4, 2020[8] and noted many of the same barriers alleged in Mr. Power's complaint.

25

26   [8] Defendants argue that Mr. Vaughn's January 4, 2020 inspection was conducted without prior
     notice and occurred at a time when Mr. Powers's counsel had been seeking defendants' stipulation
27   to an extension of the deadline to conduct the joint site inspection required by General Order No.
     56.  Claiming that defendants refused to stipulate to an extension of time, Mr. Powers
28   acknowledges that Mr. Vaughn's January 4, 2020 visit to the premises was scheduled, at counsel's
     request, in response to defendants' present motion to dismiss.  The Court notes that both sides

United States District Court
Northern District of California

1   Additionally, Mr. Vaughn states that he found excessive slopes at the Facility's entrance.  Dkt.

2   No. 21-1.  In their reply, defendants submitted additional exhibits purporting to show work

3   performed on the property, including remedial work apparently conducted in connection with the

4   earlier-filed disability rights litigation, as well as work defendants say was performed for routine

5   maintenance.  Dkt. No. 29 at ECF 19-27, Dkt. No. 30 at ECF 15-19.  However, these documents

6   do not squarely address the particular accessibility barriers Mr. Powers alleges he encountered in

7   July 2019.  Additionally, while defendants submitted a photo purporting show that slopes at the

8   Facility's entrance are within the legal limits, it is unclear who took those photos, when, and under

9   what circumstances.  Dkt. No. 29 at ECF 38-39; Dkt. No. 30 at ECF 33-34.

10          Defendants nonetheless point out that, while they dispute that accessibility laws require

11   them to do so, they have added another parking space designated for disabled persons.  Dkt. No.

12   30 at ECF 9, 35-36.  Additionally, with their supplemental papers, defendants submit a declaration

13   from Mr. Bray, who now states that he issued his November 15, 2019 "Statement of Accessibility

14   Compliance" because he finds that the access barriers alleged in Mr. Powers's complaint either do

15   not exist or are based on accessibility mandates that are not required for the property.  Dkt. No. 41

16   ¶ 6.  Additionally, Mr. Bray says that he recently confirmed these findings during his March 12,

17   2020 inspection of the property.  *Id*. ¶ 10.

18          Mr. Bray's declaration regarding his recent March 12, 2020 visit indicates that many of the

19   alleged accessibility barriers Mr. Powers complains of may have been remedied, although disputes

20   apparently remain as to whether certain accessibility mandates are required, such as an accessible

21   route from the public street and sidewalk to the entrance of the Facility.  The Ninth Circuit has

22   cautioned that courts should not dismiss a matter on jurisdictional grounds where "the

23   jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

24   dependent on the resolution of factual issues going to the merits of an action."  *Safe Air for*

25   

26   appear to have failed to comply with the requirement to have a joint site inspection, and the effect
    of Mr. Vaughn's January 4, 2020 visit was a unilateral inspection by Mr. Powers.

27   Notwithstanding defendants' purported refusal to agree to an extension of the site inspection
    deadline, the Court notes that the inspection deadline was December 20, 2019 (Dkt. No. 3), and

28   Mr. Powers did not file anything with the Court indicating that an extension of time was
    necessary.

United States District Court
Northern District of California

1    *Everyone*, 373 F.3d at 1039 (internal quotations and citation omitted); *see also Johnson v. SSR*

2    *Group, Inc.*, No. 15-cv-05094-MEJ, 2016 WL 3669994, at *2 (N.D. Cal. July 11, 2016) (same).

3    Defendants' citation to *Langer v. McKelvey*, No. CV 14-08842-RGK (JPRx), 2015 WL 13447522

4    (C.D. Cal. Sept. 24, 2015) does not compel a contrary conclusion.  In *Langer*, the defendants

5    presented undisputed evidence that they made necessary changes to bring the facility into

6    compliance, thereby mooting the plaintiff's claim for injunctive relief.  *Id*. at *2.  As discussed

7    above, the evidence submitted by defendants in their initial briefing did not clearly establish that

8    the alleged accessibility barriers had been remedied, and Mr. Vaughn's declaration concerning his

9    January 4, 2020 inspection states that barriers remained at the property.  Although Mr. Bray's

10   March 12, 2020 concerns his more recent inspection of the property, that declaration was

11   submitted with defendants' supplemental briefing, and Mr. Powers has not had an opportunity to

12   respond.  In view of the posture of these proceedings, the Court declines to dismiss this matter on

13   jurisdictional grounds, without giving Mr. Powers an opportunity to inspect the property to

14   determine whether the alleged accessibility barriers have been remedied.  Additionally, as noted

15   above, the parties apparently continue to dispute whether defendants are required to provide

16   certain accessibility features.

17        In sum, the Court will not dismiss the action at this juncture because the jurisdictional

18   analysis is coextensive with the merits of Mr. Powers's ADA claim.  Such matters are more

19   appropriately addressed on a motion for summary judgment regarding whether there are no ADA

20   violations or whether Mr. Powers's request for injunctive relief otherwise is moot.  However, the

21   Court notes that defendants have raised a number of issues that Mr. Powers and his counsel are

22   directed to seriously consider in proceeding with this case, including assertions that Mr. Powers no

23   longer lives near the Facility (which reportedly has permanently closed its business), and that Mr.

24   Powers perhaps was not legally permitted to be in the vicinity of the Facility in the first place.

25        **C.     Unruh Act Claim**

26        A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all

27   claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because the Court has not

28   dismissed the ADA claim, the Court denies defendants' request to decline to exercise jurisdiction

United States District Court
Northern District of California

11

1     over Mr. Powers's Unruh Act claim.

2     **IV.     CONCLUSION**

3         Based on the foregoing, defendants' motion to dismiss is denied.  The Court resets the

4 deadline for the joint site inspection to August 20, 2020.  The parties shall promptly advise the

5 Court if the site in question currently is closed due to the COVID-19 public health emergency.

6 Other deadlines set in the Court's scheduling order (Dkt. No. 3) are adjusted as follows:

7

| | |
|---|---|
| Last day for parties to complete initial disclosures, including defendant's disclosure re: construction or alteration history of subject premises | August 13, 2020 |
| Last day for parties to meet to discuss settlement | September 17, 2020 |
| Last day for plaintiff to file "Notice of Need for Mediation" | October 1, 2020 |
| Last day for plaintiff to file Motion for Administrative Relief Requesting Case Management Conference | 7 calendar days after mediation |

The joint site inspection, and all remaining events required under General Order No. 56, shall be

conducted in compliance with the requirements outlined in the "Second Amended Notice re

Procedures in All Cases Referred to ENE or Mediation and re Pre-Mediation Procedures in Cases

Subject to General Order 56," a copy of which is appended to this order and which is also

available on this district's website.[9]  Among other things, the Court notes that although its

scheduling order states that the parties' settlement discussions must be held in person (Dkt. No. 3),

recent amendments to the General Order No. 56 procedures provide that the settlement conference

may not be conducted by telephone or email, but may be held either by videoconference or in

person, so long as all participants agree and gathering in person is permitted by applicable state

---

[9] https://www.cand.uscourts.gov/wp-content/uploads/court-programs/adr/Second-Amended-Notice-re-Procedures-in-Cases-Referred-to-ENE-or-Mediation-and-re-Procedures-in-Cases-Subject-to-General-Order-56-060320.pdf

*United States District Court*
*Northern District of California*

1  and local laws.

2       **IT IS SO ORDERED.**

3  Dated:  June 19, 2020

4

5  *Virginia K. DeMarchi*

6  VIRGINIA K. DEMARCHI
   United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13

Second Amended Notice re Procedures in All Cases Referred to ENE or Mediation
and re Pre-Mediation Procedures in Cases Subject to General Order 56

On June 4, 2020, Chief Judge Phyllis Hamilton approved the following amended procedures
applicable to cases referred to ENE or Mediation through the Court's ADR Program:

> The requirement of in-person attendance set forth in ADR L.R. 5-10 and 6-10 is
> suspended, and no in-person ENE or mediation sessions shall take place until further
> notice, even if gathering in person at the appointed time would be permitted by state or
> local laws. All ENE and mediation sessions shall take place by videoconference within
> the time set by the Court or within the presumptive time set by operation of ADR L.R. 3-
> 7.

> Parties must meet and confer with one another and consult with the assigned neutral
> regarding the appropriate timing for their ENE or mediation session. If the parties agree
> to proceed by video conference before the ADR completion deadline, no filing is
> required. If the parties wish to extend the ADR completion deadline for any reason, they
> must file either a stipulation and proposed order or an administrative motion with the
> assigned judge specifying the reason for seeking an extension and the proposed date for
> the ENE or mediation session. Requests to extend the ADR completion deadline
> indefinitely are disfavored.

> If technological barriers preclude a party from participating by videoconference, the
> assigned neutral may authorize telephonic participation for that party or may request
> approval from the ADR Director to conduct the entire session telephonically. If
> participating by videoconference would impose an extraordinary or otherwise
> unjustifiable hardship for a reason unrelated to technological barriers, a request for
> relief must be presented to the ADR Magistrate Judge at least 14 days in advance of the
> scheduled session, in accordance with ADR L.R. 5-10(d) and 6-10(d).

On June 4, 2020, Chief Judge Phyllis Hamilton approved the following procedures applicable to
ADA Access cases subject to General Order 56:

> In any case subject to General Order 56 involving a physical site, the deadlines for
> conducting a joint site inspection and settlement meeting are deemed tolled from
> March 25, 2020 until June 4, 2020. For a physical site that is closed on or after June 4,
> 2020, these deadlines are deemed tolled until the site is again open to the public.

> The ADR Program will refer a case for mediation if the required Form GO 56-Notice of
> Need for Mediation and Certification of Counsel (amended June 4, 2020) certifies
> (a) that all required participants attended the joint site inspection and the settlement
> meeting required by General Order 56 either
> > (i) by videoconference, or

          (ii) in person, so long as all participants agreed and gathering in person was permitted by applicable state and local laws; and

(b) that the parties have completed the initial disclosures required by Fed. R. Civ. P. 26(a)(1) and have complied with General Order 56, paragraph 4.

Neither the joint site inspection nor the settlement meeting may be conducted by telephone or email. The parties may by agreement elect to replace the joint site inspection with another process that enables them to obtain and exchange the information needed to prepare effectively to evaluate the case for resolution at the settlement meeting. If the parties elect to replace the joint site inspection with another process, they must attach to the Notice of Need for Mediation and Certification of Counsel a joint letter describing the terms of the parties' agreement and confirming that all requirements of the agreement have been satisfied.

Any request for relief from these procedures must comply with General Order 56, paragraph 3, and, for the convenience of the assigned judge, must attach to the stipulation or administrative motion a copy of this Second Amended Notice.